UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Specialized Loan Servicing, LLC,
      Appellant

      v.                                    Case No. 20-cv-1039-SM
                                            Opinion No. 2021 DNH 153

Town of Bartlett,
      Appellee


**O R D E R**


Appellant, Specialized Loan Servicing, LLC ("SLS"), filed
an adversary proceeding in the bankruptcy court, seeking to
resolve a dispute with the Town of Bartlett, New Hampshire.
Invoking the court's equitable authority, SLS asked the
bankruptcy judge to reprioritize liens attached to a parcel of
land and give its mortgage deed priority over a lien that the
Town had recorded prior in time.  The bankruptcy court denied
SLS's request and granted summary judgment in favor of the Town.
SLS appeals that order, asserting that the bankruptcy court
erred.


For the reasons discussed, the challenged order of the
bankruptcy court is affirmed.

**Background**

Edward Furlong, the debtor in the underlying bankruptcy proceeding, owned property located at 1467 Route 302, Bartlett, New Hampshire (the "Property").  In April of 2006, Furlong obtained a loan from Countrywide Home Loans, Inc. in the amount of $220,000.  To secure that loan, Furlong conveyed a mortgage deed to the Property to Mortgage Electronic Registration Systems ("MERS") as nominee for Countrywide (the "2006 Mortgage").  At the same time, Furlong also obtained a home equity line of credit in the amount of $27,500, which was secured by a second mortgage deed to the Property (the "Home Equity Mortgage"). Both mortgage deeds securing those loans were recorded in the Carroll County Registry of Deeds on April 28, 2006.  About seven years later, in late 2013, Furlong applied to refinance the 2006 loan through Nationstar Mortgage LLC.

Before beginning the refinancing process, Furlong had been engaged in protracted and ongoing litigation with the Town over an alleged zoning violation at a second property he owned in Bartlett which abuts the Property.  That continuing violation prompted the Town of Bartlett to assess substantial fines against Furlong.  Eventually, on December 19, 2012, the Carroll County Superior Court ordered Furlong to pay statutory fines totaling $344,025, with all but $10,000 suspended, provided

Furlong corrected the violation within 60 days (the "2012
Order").  Furlong never corrected the violation, and in June,
2013, the Town filed a Petition to Attach, seeking attachment
and judgment lien to secure the court's order.  That petition
was granted and, on December 11, 2013, the Town properly
recorded the Petition to Attach and Order of Attachment in the
amount of $362,000 in the Carroll County Registry of Deeds.
That lien encumbered, among other things, the Property; it was
properly recorded and indexed in Furlong's chain of title; and
it was discoverable by anyone conducting a title review and
searching Furlong's name.

Meanwhile, at the start of Furlong's refinancing process
with Nationstar, on October 29, 2013, the refinancing settlement
agent obtained a title report that (correctly) reflected no
"Judgment/Liens" on the Property.  But, as noted above, six
weeks later, on December 11, the Town recorded its attachment in
the Carroll County Registry of Deeds.  As of that date, the
Town's attachment was a third priority lien on the Property,
inferior to both the 2006 Mortgage and the Home Equity Mortgage.

As part of the refinancing process, Nationstar obtained a
copy of Furlong's credit report.  That report notes "serious
delinquency, and derogatory public record or collection filed,"

3

and stated that the "time since delinquency is too recent or
unknown."  That adverse credit report appears to have prompted
no response from Nationstar.

Furlong completed an application for a refinance mortgage
loan from Nationstar in the amount of $201,200.  The loan
application disclosed that Furlong owed $199,305.98 on the 2006
Mortgage loan, and $27,500 on the Home Equity Mortgage loan, and
represented that the total amount of liens and encumbrances on
the Property was the sum of those two amounts: $226,805.98.
Furlong's application did not disclose the Town's attachment.
An appraisal done at that time valued the Property at $199,000 -
much less than the sum of those (disclosed) encumbrances.
Accordingly, as a condition of the refinance, Nationstar sought
and obtained a subordination of the Home Equity Mortgage to the
mortgage deed that Nationstar would eventually record to secure
Furlong's repayment obligations (the "Refinanced Mortgage").
That subordination agreement would allow the Refinanced Mortgage
to have priority over the Home Equity Mortgage and the value of
the security pledged by Furlong would be more closely aligned
with the amount of the loan Nationstar planned to extend to him.

Furlong signed the Refinanced Mortgage on January 3, 2014,
and, on January 8, 2014, the proceeds from the associated loan

4

were used to discharge the 2006 promissory note.  The Refinanced
Mortgage was recorded on January 16, 2014, as was the
subordination of the Home Equity Mortgage.  On February 4, 2014,
a discharge of the 2006 Mortgage was recorded.  Critically,
however, neither Nationstar nor any party acting on its behalf
(or on behalf of the title insurance company) updated the
October 29 title search prior to closing, or upon recording the
Refinanced Mortgage, or upon recording the discharge of the 2006
Mortgage.  Nor did Nationstar seek the Town's agreement to
subordinate its lien on the Property to the Refinanced Mortgage.
Nationstar's inaction/inattention was costly because, at that
point, the Town's attachment lien was senior in priority to
Nationstar's subsequently-recorded Refinanced Mortgage; the
Refinanced Mortgage did not simply assume the lien priority
formerly associated with the 2006 Mortgage.  See, e.g., Bank of
Am., N.A. v. Citizens Bank, No. 14-CV-455-PB, 2015 WL 9305653,
at *2 (D.N.H. Dec. 21, 2015) ("When a lien is discharged,
priority rights associated with the lien ordinarily are lost and
the next most senior lienholder succeeds to the priority
position of the lienholder whose lien was discharged.")

Meanwhile, litigation between the Town and Furlong
continued and the zoning violations remained unabated.  In 2015,
the New Hampshire Supreme Court affirmed the 2012 Order

5

compelling Furlong to pay statutory fines to the Town totaling
$344,025.  Consequently, on May 26, 2016, the Town recorded an
Execution of Judgment for all amounts due under the 2012 Order,
including costs, attorney's fees, and interest, for a total of
$396,801.42.  Around that time, the Town learned that the 2006
Mortgage had been discharged and that its attachment had
priority over the Refinanced Mortgage.  Because the Town's
attachment was obvious to anyone who might examine the relevant
records at the registry of deeds, and because Nationstar never
asked the Town to subordinate its lien to the Refinanced
Mortgage, the Town says it "assumed that [Forlong]'s note was
cross-collateralized with other assets of the Debtor, ostensibly
in different jurisdictions given [Furlong's] frequent travel and
apparent business dealings in Maine and Florida."  Appellee's
Brief at 7.  And, without the 2006 Mortgage in place (which once
had priority over the Town's lien), the Property was far more
attractive to third-party purchasers, or even for purchase by
the Town (which would remediate the violations and resell the
lot to recoup its remediation costs).

    Accordingly, the Town decided to proceed with a sheriff's
sale of the Property which, once completed, would eliminate any
subordinate liens on the Property, including the Refinanced
Mortgage.  In reaching that decision (and foregoing other

collection options), the Town says it relied upon the land
records at the Carroll County Registry of Deeds, which clearly
revealed that its attachment had priority over Nationstar's
Refinanced Mortgage: "a sheriff's sale of the Property would be
illogical if the Property was subject to the [Refinanced]
Mortgage that had priority over the Town's Attachment.  A
sheriff's sale would not extinguish any prior mortgage, and as
such no buyer would bid on the property secured by a mortgage
equal to or greater than the value of the parcel."  Appellee's
Brief at 8.

So, with the understanding that its attachment lien was
superior to the Refinanced Mortgage, the Town scheduled a
sheriff's sale of the Property for the summer of 2016.  A copy
of the notice of sheriff's sale was sent to Nationstar, as well
as all other lienholders of record.  Nationstar did not respond.
But, before the sheriff's sale could proceed, on August 12,
2016, Furlong filed a chapter 7 bankruptcy petition.  In
accordance with the Bankruptcy Code's automatic stay provisions,
the sheriff's sale was cancelled.

On March 9, 2017, seven months after Furlong sought
bankruptcy protection, counsel for Nationstar filed an
appearance in the bankruptcy case.  Then, in January of 2018,

the Town entered into a Stipulation and Settlement Agreement
with the chapter 7 trustee (the "Stipulation").   The Stipulation
contemplated the sale of all Furlong's real estate, including
the Property.   As a part of the Stipulation, the Town agreed to
"carve out" for the bankruptcy estate a portion of the real
estate sale proceeds to which the Town says it would otherwise
have been entitled.   In exchange, the trustee agreed to settle
numerous lawsuits that Furlong had brought against the Town and
its officials.

     According to the Town, it and the bankruptcy trustee relied
upon the priority position of the Town's lien when negotiating
the Stipulation, estimating the available proceeds upon the sale
of the Property, and negotiating a split of those proceeds
between the Town and the trustee (for the benefit of unsecured
creditors of Furlong's estate).   The Town and the trustee join
in saying that neither would have entered into the Stipulation –
certainly not on the terms to which they agreed - absent their
reasonable understanding that the Town held a senior lien
position with respect to the Refinanced Mortgage.

     The chapter 7 trustee filed a motion to approve the
Stipulation, a copy was provided to all parties, and the court
set the matter for hearing on February 7, 2018.   Meanwhile, the

day before the hearing, Nationstar assigned the Refinanced
Mortgage to SLS.  Neither SLS nor Nationstar appeared at the
hearing.  Nor did either object to the proposed Stipulation.
Following the hearing, the court granted the trustee's motion
and approved the Stipulation.

     Parenthetically, the court notes that SLS argues that
"there was no need for it to object to the Stipulation because
the Stipulation protected SLS's equitable subrogation claim by
giving priority ahead of the Town to 'any and all liens
determined to be superior to the Town's judgment lien thereon'
as an encumbrance on the Property."  Appellant's Brief at 29
(quoting the Stipulation).  But, the Stipulation does not
acknowledge any potential equitable claim by SLS (indeed it is
unlikely that the Town or the trustee even contemplated such a
claim).  Rather, the Stipulation provides that, "the parties
agree that the Town has a first-position lien on the property at
1467 Rte 302, following any outstanding taxes."  Stipulation at
para. 3.  The Town explains the language upon which SLS relies
as follows:

     Ultimately, the Trustee, the Town, and another secured
     creditor entered into the Stipulation.  The
     Stipulation provides that the Town enjoys a first
     position lien on the Property.  The Stipulation also
     provides for the possibility that liens secured by the
     Property may be adjudged prior to the Town's lien.

> <u>This provision refers to the Bank of America line of</u>
> <u>credit</u> [i.e., the Home Equity Mortgage], which was
> perfected prior to the Town's lien but was
> subordinated to the [2006] Mortgage.  This provision
> <u>also pertains to a certain United States tax lien</u>
> recorded at the Registry at Book 3139, Page 0456: the
> Town believed that the United States tax lien was
> junior to the Town's lien, but an IRS official
> suggested that the United States' lien enjoyed
> priority over the Town.  To address these ambiguities,
> the parties inserted language into the Stipulation to
> provide <u>for the possibility that the equity line of</u>
> <u>credit and/or the United States tax lien would be</u>
> <u>determined to have priority</u> over the Town's lien.  No
> affidavit or deposition transcript exists to challenge
> the Town and Trustee's sworn assertion of the purpose
> of said language.

Appellee's Brief at 10 (emphasis supplied).

The following month, SLS filed an appearance in Furlong's

bankruptcy proceeding.  Then, in the fall of 2018 - nearly five

years after the Town recorded its attachment - SLS commenced

this adversary proceeding against the Town.  In an effort to

secure priority over the Town's lien for its Refinanced

Mortgage, SLS urged the bankruptcy court to apply the doctrine

of equitable subrogation to reorder the priority of the parties'

respective liens and subordinate the Town's lien to the

Refinanced Mortgage.

Once discovery was completed the parties filed cross

motions for summary judgment.  Following oral argument, the

bankruptcy court issued a thorough and well-reasoned decision

in which it denied SLS's motion for summary judgment, and granted the Town's cross-motion.  In other words, the bankruptcy court declined to exercise its equitable authority to subordinate the Town's lien to the Refinanced Mortgage.  This appeal followed.

## Standard of Review

This court has jurisdiction to hear appeals from final judgments, orders, and decrees issued by the bankruptcy court. 28 U.S.C. § 158(a)(1).  Here, the bankruptcy court granted the Town's motion for summary judgment.  "The legal standards traditionally applicable to motions for summary judgment . . . apply without change in bankruptcy proceedings."  In re Moultonborough Hotel Grp., LLC, 726 F.3d 1, 4 (1st Cir. 2013). See also Fed. R. Bankr. P. 7056.

This court's review of the bankruptcy court's order on summary judgment is de novo.  See In re Hannon, 839 F.3d 63, 69 (1st Cir. 2016); ROK Builders, LLC v. 2010-1 SFG Venture, LLC, No. 12-CV-57-PB, 2012 WL 3779669, at *3 (D.N.H. Aug. 30, 2012); see also Brae Asset Fund, L.P. v. Kelly, 223 B.R. 50, 55 (D. Mass. 1998) ("[T]he district court reviews the bankruptcy court's decision under the same standards of review as those the Court of Appeals invokes in reviewing a district court's

decision on a motion for summary judgment filed in the district court."). Consequently, the question presented is "whether any 'genuine issue of material fact exists' and whether 'the moving party is entitled to judgment as a matter of law.'" In re Moultonborough Hotel Grp., LLC, 726 F.3d at 4 (quoting Soto-Rios v. Banco Popular de Puerto Rico, 662 F.3d 112, 115 (1st Cir. 2011)).

## Discussion

Equitable subrogation applies "where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor." Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 27 (2007) (citation and internal punctuation omitted). It is a "broad doctrine, which is given liberal application." Id. Nevertheless, as this court (Laplante, J.) has observed, the New Hampshire Supreme Court views resort to equity to reorder the priority of recorded liens with some "trepidation" because that relief "runs counter to the 'essential purpose' of recording statutes in 'ensuring notice to the public of property interests.'" Green Tree Servicing, LLC v. United States, 783 F. Supp. 2d 243, 253 (D.N.H. 2011) (quoting Hilco, Inc. v. Lenentine, 142 N.H. 265, 267-68 (1997)). Here, having discharged the 2006 Mortgage and associated loan, SLS asserts that equity should permit it to succeed to the

12

priority lien position once held by the 2006 Mortgage – that is, a position superior to the Town's lien.  In other words, SLS "invoke[s] equity to relieve [it] from the result that would follow from the established order of priority as dictated by our recording system."  Hilco, 142 N.H. at 267.

All agree that the bankruptcy court accurately stated the essential elements of a viable claim for equitable subrogation under New Hampshire common law.  To prevail on that claim, SLS was required to demonstrate that: (a) in paying off Furlong's 2006 loan and discharging the 2006 Mortgage, SLS did not act as a volunteer; (b) SLS was not primarily liable for that debt; (c) SLS paid the entire debt associated with the 2006 mortgage loan; and (d) the subrogation of the Town's lien to the Refinanced Mortgage would not work any injustice to the rights of the Town or others.  See Chase, 155 N.H. at 27; Bank of Am., 2015 WL 9305653, at *1.  That SLS (or its predecessor in interest, Nationstar) was negligent in failing to discover the Town's lien does not, standing alone, preclude application of the doctrine of equitable subrogation.  See Fifield v. Mayer, 79 N.H. 82, 85 (1918) ("The mere fact that the loss of the party seeking to be subrogated arose from his own negligence will not debar him from the right, unless its enforcement would be prejudicial to others who are not in fault.") (citation omitted).  But see, Hilco, 142

13

N.H. 265, 268 (1997) ("The plaintiffs do not allege deceit, and excusable ignorance is not present here. The plaintiffs had constructive notice of the Lenentines' recorded mortgage, and we hold that the trial court abused its discretion when it allowed the plaintiffs to be shielded by equity from the consequences of their agent's negligence in not discovering the Lenentines' mortgage.").

Here, when the Town recorded its lien against the Property, that lien was subject to the 2006 Mortgage. But, through inattention and/or negligence, SLS discharged the 2006 Mortgage and then recorded the Refinanced Mortgage without first obtaining a subordination agreement from the Town (or a discharge of its lien), thereby placing the Refinanced Mortgage in an inferior position relative to the Town's lien. But, if the Town's lien could be subordinated to the Refinanced Mortgage without otherwise unfairly prejudicing the Town (or other parties), the bankruptcy court could have exercised its equitable authority to restore the status quo ante and allowed SLS to enjoy the first priority lien it says was anticipated when Furlong refinanced.

The Town concedes that SLS has established the first three elements of a viable claim for equitable subrogation. The

parties' dispute turns entirely upon the fourth and final

element: whether subordinating the Town's lien to SLS's mortgage

would work an "injustice to the rights of others."  Chase, 155

N.H. at 27.  In reaching the conclusion that the Town had

demonstrated that SLS was not entitled to the benefit of

equitable subrogation, the bankruptcy court first noted that

SLS's failure to act in a timely manner when specifically

notified of the Town's claims of priority, undermined its

request for equitable relief:

> The Court further finds SLS's failure to act upon
> notice of the Town's prior claims of priority greatly
> weakens the strength of its current plea for equitable
> relief.  As stated by the New Hampshire Supreme Court,
> it is the Court's duty to "guard the integrity and
> reliability of our recording system, viewing claims to
> circumvent the established order of priority, through
> resort to equity, with trepidation." Hilco Inc. v
> Lenentine, 142 N.H. 265, 267, 698 A.2d 1254, 1256
> (1997); Amoskeag v. Chagnon, 133 N.H. at 14, 572 A.2d
> at 1155 ("The [recording] statutes serve to protect
> both those who already have interests in land and
> those who would like to acquire such interests").  The
> grant of equitable relief is within the sound
> discretion of the trial court and may only be awarded,
> "not in opposition to, but in accordance with
> established principles of law." Hanslin v. Keith, 120
> N.H. 361, 364, 415 A.2d 329, 331 (1980).

Bankruptcy Order at 13.  In light of the facts presented, the

bankruptcy court concluded that SLS was not entitled to the

equitable relief it sought – the prejudice to the Town (and the

trustee) was simply too significant.

In this case, the Town, an attaching lien creditor,
took actions based on the registry record that are
incongruous with SLS's claim for equitable subrogation
and equitable reinstatement.  Although the mere
passage of time is not preclusive to the requested
relief, it weakens the equities of the plaintiff's
case if, during that time, third parties have made
decisions and taken actions based on the registry
record.  The Court finds, under the facts of this
case, because the Town acted in reliance on the
registry record, equitable subrogation or equitable
reinstatement would each work an injustice to the
rights of the Town, as well as the chapter 7 trustee,
thus precluding the equitable relief which SLS seeks.

Bankruptcy Order at 14.

I.   <u>SLS's Delay in Seeking Equitable Relief and the Town's
     Reasonable Reliance on the Land Records</u>.

While negligence alone will not necessarily preclude a

party from obtaining the benefit of equitable subrogation, SLS's

repeated failures to protect its own interests and its delay in

seeking equitable relief are certainly factors that cannot be

overlooked when evaluating its request for equitable relief.  As

noted in one legal treatise:

Since the purpose of [equitable] subrogation is to
prevent unjust enrichment, it will not be granted
where it would produce injustice.  In virtually all
cases in which injustice is found, <u>it flows from a
delay by the payor</u> in recording his or her new
mortgage, in demanding and recording a written
assignment, or <u>in otherwise publicly asserting
subrogation to the mortgage paid</u>.  The delay may lead
the holder of an intervening interest to take

<u>detrimental action in the belief that that interest
now has priority</u>.

Restatement (Third) of Property: Mortgages, § 7.6(f) (emphasis
supplied).  So it was in this case: during the nearly five-year
delay between the discharge of the 2006 Mortgage and SLS's
asserted entitlement to equitable subrogation, the Town and
trustee detrimentally (and in good faith) relied upon the
registry records which revealed the Town's lien had priority
over the Refinanced Mortgage.

    In 2014, before paying off the 2006 loan and discharging
the 2006 Mortgage, SLS neglected to update its title search of
the Property.  Such a search would have revealed the Town's
lien.  More than two years later, in the summer of 2016, SLS
failed to respond to notice of the Town's planned sheriff's sale
of the Property – another indication that the Town's lien had
priority over SLS's Refinanced Mortgage.  And, in 2018, SLS
ignored notice it received of the Trustee's motion before the
bankruptcy court to approve the Stipulation between the trustee
and the Town, pursuant to which the Property would be sold, the
proceeds divided between those two parties, and SLS's Refinanced
Mortgage would be eliminated.  If, at any of those points, SLS
had undertaken a review of the registry records (or even
inquired of the Town), it would have realized that the Town had

17

priority over its lien on the Property and it could have
intervened, before the Town and the trustee detrimentally relied
upon the registry records that plainly disclosed the Town's
senior lien position.

Meanwhile, during those intervening years, the Town
considered various means by which it could put a halt to the
ongoing zoning violations at the Property and/or recover at
least some of the monies Furlong owed.  The options available to
the Town included seeking an injunction against Furlong to stop
the zoning violations, seeking judicial authorization to raze or
repair the offending structures, conducting a tax sale of the
abutting parcel owned by Furlong (which was subject to
significant tax liens), and/or foreclosing its lien on the
Property through a sheriff's sale.  In considering its various
options and formulating its strategy, the Town understandably
relied upon the land records at the registry of deeds, which
plainly and unmistakably showed that its lien on the Property
was superior to the Refinanced Mortgage.  The priority of its
lien was a critical factor in the Town's decision-making.

Initially, the Town settled upon a strategy involving a
sheriff's sale of the Property.  Once Furlong sought bankruptcy
protection, however, the Town was forced to reconsider its

options.  So, after negotiating with the bankruptcy trustee, the Town embarked upon a new plan – one outlined in the Stipulation approved by the bankruptcy court, pursuant to which the Town would, in exchange for the settlement of numerous claims advanced against it by Furlong, share the proceeds derived from a sale of the Property with the bankruptcy trustee.  It probably also bears noting that the Town spent significant resources not just negotiating the Stipulation with the trustee, but also defending that agreement from repeated attack by Furlong.  See, e.g., Furlong v. Town of Bartlett, 17-cv-718-JL, "Objection to Motion to Vacate Stipulation" (document no. 58); Furlong v. Town of Bartlett, 19-cv-351-JL, "Motion to Dismiss Appeal" (document no. 13).

But, says SLS, when the Town and the trustee negotiated the Stipulation, they were aware that the loan associated with the Refinanced Mortgage had been used to pay off the 2006 Mortgage. See Appellant's Brief at 26.  So, according to SLS, applying the doctrine of equitable subrogation would not work an "injustice" upon them: SLS's Refinanced Mortgage would simply be given the same priority once held by the 2006 Mortgage and the Town's lien would, once again, be in an inferior position.  SLS's factual statement is correct, but it fails to tell the full story.  As noted above, based upon their review of the registry records,

19

the Town and the trustee assumed - not unreasonably - that when
Furlong refinanced the 2006 Mortgage, he secured his repayment
obligations by giving SLS a junior lien on the Property
(subordinate to the Town's) along with additional liens on other
property he owned, whether in New Hampshire, Maine, Florida, or
elsewhere.

    That is a reasonable and logical conclusion to draw
because, even if SLS had been aware of the Town's lien when it
recorded the Refinanced Mortgage, there were only a few ways it
could have achieved priority over that lien – it did not happen
by operation of law.  See Bank of Am., N.A. v. Citizens Bank,
No. 14-CV-455-PB, 2015 WL 9305653, at *2.  The simplest and most
obvious way would have been to ask theTown to voluntarily
subordinate its lien to the Refinanced Mortgage.  It is,
however, entirely unclear how the Town would have responded to
such a request.  Alternatively, it could have paid some amount
to the Town to release its lien (a highly unlikely outcome).
Or, it could have spent significant resources going to court to
argue its entitlement to the benefit of equitable subrogation
(as it eventually did, years later).  Or, of course, it could
have simply refused Furlong's application to refinance the 2006
mortgage loan.  At the time, however, SLS took none of those
actions.  Consequently, a review of the registry records could

lead one to reasonably infer that SLS consciously chose to encumber the Property with a mortgage deed that it <u>knew</u> was inferior to the Town's lien (but that SLS may have minimized its unsecured risk by also obtaining additional security from Furlong with liens on other property he owned).

The Town's (and the trustee's) reliance upon the land records at the Carroll County Registry of Deeds, as well as its understanding that its lien was superior to SLS's Refinanced Mortgage, were reasonable.

II.  <u>Prejudice to the Town and Trustee</u>.

Presumably, if SLS were granted the equitable relief it seeks, the Stipulation between the Town and the trustee would be nullified and, to avoid any prejudice to them, they would somehow have to be restored to their "pre-Stipulation" positions.  That would be difficult, if not impossible, to achieve (and SLS has certainly not proposed any viable options). First, it has been nearly five years since the Town and the trustee entered the Stipulation and decided to settle all litigation between them.  It is, then, entirely possible that evidence relevant to those cases has gone stale, witnesses' memories have faded, and some evidence may no longer be available.  So, even if the trustee were somehow able to

reinstate those claims, he would plainly suffer some prejudice: prosecuting them at this late point in time would undeniably be more difficult.  Prejudice to the trustee would be even more significant if those claims could not be reinstated: the trustee, on behalf of the estate's unsecured creditors, would have abandoned (or lost) those claims and received no consideration at all in exchange.  Likewise, granting SLS the relief it seeks would deprive the Town of the benefit of its bargain with the trustee: the settlement of all outstanding claims brought against the Town by Furlong.  Additionally, the time, energy, and money the Town spent defending the Stipulation against Furlongs' various attacks in this court would have been wasted.

The point is this: neither the Town nor the trustee can be easily restored to the positions they occupied prior to their negotiation of the Stipulation and subsequent sale of the Property.  In reliance upon the records at the registry of deeds showing the Town's senior lien position, each has spent significant financial resources and each has materially and, perhaps, irretrievably altered its position.  SLS has not shown how either the Town or the trustee could be restored to a position that is at least roughly equivalent to the position it occupied prior to the discharge of the 2006 Mortgage.  The Town,

on the other hand, has shown that it (and the trustee) would be significantly prejudiced if SLS were granted the relief it seeks.

SLS largely ignores the harm that would be imposed upon the Town and the trustee if its request for equitable relief were granted.  Instead, it focuses on minimizing the financial cost to the Town associated with its (aborted) efforts to conduct the sheriff's sale and argues that the alternatives considered, but rejected, by the Town were not truly viable options (suggesting it suffered no harm by "rejecting" those alternatives and settling upon the sheriff's sale).  Indeed, SLS asserts that "there is no evidence of actual or quantifiable harm or prejudice to the Town," Appellants Brief (document no. 7) at 2, and says "there is no proof of prejudice to the trustee, who is not even a party to the adversary proceeding," id. at 11.  The bankruptcy court sustainably concluded otherwise.

### Conclusion

For the foregoing reasons, as well as those set forth in Appellee's brief (document no. 10), the court, having reviewed the bankruptcy court's decision de novo, concludes that the Town of Bartlett demonstrated that SLS was not entitled to the benefits of equitable subrogation.  Specifically, the Town

established that it and the bankruptcy trustee reasonably relied
to their detriment upon the land records at the Carroll County
Registry of deeds – records that plainly revealed the priority
of the Town's lien over the Refinanced Mortgage.  Additionally,
the Town demonstrated that if the doctrine of equitable
subordination were applied to elevate the priority of the
Refinanced Mortgage over that of the Town's lien, the Town (and
the trustee) would be significantly prejudiced.  The bankruptcy
court correctly and properly declined to exercise its equitable
powers to reprioritize the liens in SLS's favor.  The decision
by the bankruptcy court is affirmed.

       **SO ORDERED.**

                                 _____

                               Steven J. McAuliffe
                               United States District Judge

September 29, 2021

cc:  John F. Willis, Esq.
     Christopher T. Hilson, Esq.
     Edmond J. Ford, Esq.
     Richard K. McPartlin, Esq.